UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| TONYA MARTIN & MAREEKA RICE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 5:25-cv-00155-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| RIDGEWAY NRF OPERATIONS LLC, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Defendants' Partial Motion to Dismiss. [R. 4]. Defendants seek dismissal of all claims asserted by Plaintiff Tonya Martin. [*Id.*] For the reasons that follow, the Court **DENIES** the Motion.

**I**

This case arises from the firing of Plaintiffs Tonya Martin and Mareeka Rice from Ridgeway Nursing & Rehabilitation Facility.[1] Defendants Ridgeway NRF Operations LLC and Valley Stream Operator I, LLC own and operate the Ridgeway facility. The facility is a short-term rehabilitation and long-term nursing care center catering to the elderly and those with serious health issues. Martin worked as a Unit Manager. In this role, she provided direct patient care and supervised nursing staff. During the week of March 10, 2023, Ridgeway management distributed questionnaires to staff asking about facility practices. In her Complaint, Martin believes that she was the only Unit Manager who completed the questionnaire. On March 13, 2023, Martin completed the questionnaire and truthfully answered "yes" to two questions

---

[1] The Court draws these facts from the Plaintiffs' Complaint. [R. 1-1]. This instant Motion does not address or challenge the claims brought by Rice, and the Court need not describe the facts relevant to her separate claims.

documenting that she was aware of patient safety violations. That same day, management called her to the Administrator's office. Brittany Tatman, Ridgeway's Administrator, said to Martin "I take your verbal resignation effective immediately," despite Martin making no such verbal resignation. She was immediately ordered to gather her belongings, and management escorted her from the premises.

Rice and Martin filed this lawsuit in the Bath Circuit Court on April 8, 2025. [R. 1 at 2]. Defendants timely removed this case to federal court on March 1, 2025. There is complete diversity between the parties as both Plaintiffs are citizens of Kentucky and the members of the LLC Defendants are citizens of New York and New Jersey. [*Id.* at 2–3]. The amount in controversy exceeds $75,000. [*Id.* at 3–6]. Plaintiffs do not challenge the jurisdiction of the Court. On March 8, 2025, the Defendants filed this Partial Motion to Dismiss, arguing that the Court should dismiss Martin's claims. This issue is fully briefed and ripe for adjudication. [Rs. 5, 6].

## II

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint—not to decide the merits of the case. To overcome a motion to dismiss, a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This probability determination "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether the complaint states a plausible claim

2

for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A complaint fails to state a claim where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

The Defendants' motion only seeks to dismiss Martin's claims under Counts 1 and 2 of the complaint. In evaluating the defendants' motion to dismiss, the Court construes the complaint in the light most favorable to Martin and accepts all of her well-pleaded facts in the complaint as true. Defendants argue that both of Martin's state law retaliation claims fail because she cannot adequately plead that she engaged in a "protected activity" bringing her under the shield of Kentucky's healthcare whistleblower law.

### A

The broad issue before the Court is whether Martin has sufficiently stated a plausible claim for relief as to Counts 1 and 2. At the outset, the Court notes that Martin could still maintain a common law claim for wrongful termination even if she could not maintain her suit under Ky. Rev. Stat. § 216B.165. *See Foster v. Jennie Stuart Medical Center, Inc.*, 435 S.W.3d 629, 635 (Ky. Ct. App. 2013) (holding that plaintiff could maintain claim for wrongful termination even where she could not advance her suit pursuant to § 216B.165). With this dichotomy in mind, the Court will address the two claims separately. The Court turns first to Martin's statutory claim.

**1**

First, the Court evaluates whether Martin has sufficiently pleaded a plausible claim for relief under Ky. Rev. Stat. § 216B.165(3) as pursued under the vehicle of § 446.070. The narrower issue deciding that question is whether Ky. Rev. Stat. § 216B.165(3) only protects employees who report patient safety issues on their own initiative, and not in response to inquiries from their employer. In other words, the Court must consider whether a protected report or activity must be initiated by the employee, rather than the employer. Because the Court is convinced that the statute does not contain such a limiting requirement, Ridgeway's partial motion to dismiss is denied.

Ky. Rev. Stat. 216B.165(3) protects healthcare employees who raise issues with their employer regarding quality of patient care and patient safety from retaliation. For our purposes, it is necessary to reproduce the three subsections of KRS 216B.165. The statute reads:

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.
>
> (2) Any individual in an administrative or supervisory capacity at the health care facility or service who receives a report under subsection (1) of this section shall investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days.
>
> (3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or

> facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

Ky. Rev. Stat. § 216B.165(1)–(3). The statute does not, on its own, set out a civil remedy permitting employees to sue a retaliatory employer. Instead, such employee-plaintiffs bring their claims under Ky. Rev. Stat. § 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." It is undisputed that Martin properly brought her claim for a violation of § 216B.165(3) via § 446.070. [*See* R. 1-1 at 9].

Defendants argue that the "plain language" of § 261B.165(3) does not protect employees who make reports about patient safety if the report was in response to a process initiated by the plaintiff's employer. [R. 4 at 7–9]. Defendants cite three unreported cases which, in their view, "establish" this holding. [*Id.*; R. 6 at 7–9]. First, defendants cite *Highlands Arh Reg'l Med. Ctr. v. Shepherd*, Nos. 2023-CA-0098-MR, 2023-CA-0118-MR, 2025 Ky. App. Unpub. LEXIS 107, at *17 (Ct. App. Mar. 7, 2025), suggesting that the Court of Appeals dismissed a plaintiff's 216B.165 discharge claim because "management instructed plaintiff to engage in making complaints, which does not qualify as a protected activity." [R. 4 at 7]. Second, Defendants cite *Hackney v. Mt. Comprehensive Care Ctr., Inc.*, No. 2015-CA-000292-MR, 2017 Ky. App. Unpub. LEXIS 817, at *9 (Ct. App. Nov. 9, 2017), claiming that the Court of Appeals affirmed the trial court's dismissal of a § 216B.165 claim "on the grounds that employee reports initiated by management do not qualify as protected activity." [R. 4 at 7]. Third, Defendants cite *Kercell v. Norton Hosps., Inc.*, 2020 Ky. Cir. LEXIS 58, at *23–24 (Jan. 29, 2020), an opinion from the Thirtieth Judicial Circuit Court of Kentucky in Jefferson County, for the proposition that "a

5

complaint compelled by a third party via subpoena does not qualify as protected activity." [R. 4 at 7].

Martin argues that all three cases are distinguishable. [R. 5 at 9–11]. But more bluntly, Martin notes that "the statute does not require protected conduct to be unsolicited to be protected" under § 216B.165. Martin provides a case involving the interpretation of the statute's "protected activity" provision. In *MacGlashan v. ABS Lincs KY, Inc.*, 84 F. Supp. 3d 595, 599–600 (W.D. Ky. 2015), the Western District rejected two arguments suggesting that MacGlashan had not made a "report" under the language of the statute. The defendants in that case suggested that the plaintiff-employee must be the first or only employee to make the report, which the Court dismissed because the statute requires no such thing. *Id.* at 599. Noting that "the statute protects 'an employee who in good faith reports'—not the first employee who reports," the Court refused to "insert a restrictive clause into the statute that does not exist." *Id.* Leaving no doubt, that Court reminded the parties that "statutes designed to protect the public should be interpreted liberally." *Id.* at 600 (citing *De Hart v. Gray*, 245 S.W.2d 434, 435–36 (Ky. 1952)).

Plaintiff also cited *Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 273 (2009), where the Supreme Court held that the anti-retaliation protections of Title VII of the Civil Rights Act of 1964 extended to an employe who spoke out about discrimination "not on her own initiative, but in answering questions during an employer's internal investigation." Drawing a comparison between the issues in *Crawford* and the issues present in her case, Martin suggests that the position advanced by Defendants would undermine the remedial purpose of § 216B.165. A portion of the *Crawford* opinion, modified to reflect the issue in this case, captures the dilemma presented by the adoption of Defendants' position:

> "If it were clear law that an employee who reported [patient safety concerns] in answering an employer's questions could be penalized

6

> with no remedy, prudent employees would have a good reason to keep quiet . . . If the employee reported [patient safety concerns] in response to the enquiries, the employer might well be free to penalize her for speaking up. But if she kept quiet . . . the employer might well escape liability[.]"

*Crawford*, 555 U.S. at 279–80 (citation modified).

None of the Defendants' proffered cases persuade the Court that Kentucky has adopted a rule requiring an employee to *initiate* a report to enjoy the protections of § 216B.165. Defendants plainly misunderstand the holdings in both *Highlands* and *Hackney*. The *Highlands* decision is distinguishable on both the facts and the law. Ashley Shepherd was a social worker employed at Highlands. 2025 Ky. App. Unpub. LEXIS 107, at *2. Highland adopted a policy that patients who were unable to pay for treatment needed to be discharged. *Id.* Shepherd often voiced that she was not comfortable with these instructions. *Id.* at *3. After a sequence of events, including a denied promotion and hostile behavior from her supervisors, Shepherd got a new job and resigned. *Id.* at *5.

A complicated procedural history ended with the case on appeal before the Court of Appeals. One of the several issues involved whether Shepherd had made a qualifying report under § 216B.165. *Id.* at *12. The Court ultimately found that she had not made a qualifying report. But the Defendants' tortured reading of the opinion misconstrues what the Court actually held. The Court agreed with Highlands "that recommending that patients be retained is not the same as disclosing the care or safety issue." *Id.* at 14. Going further, that Court held that "a wrongful termination claim based solely on Shepherd's responses to Fletcher that in no way exposed the patient safety issue for investigation and correction is beyond the scope of [the statute]." *Id.* at *17. "[The statute] deals strictly with disclosures of patient safety issues and not with a patient care decision in and of itself." *Id.* In other words, the Court held that the supposed

"report" did not even address patient safety in the first place. In our Case, Martin clearly reported that she was aware of patient safety violations. [R. 1-1 at 7].

Defendants' reading of *Hackney* is closer to their proposed rule, but still misses the mark. In *Hackney*, Mountain Comprehensive Care Center fired Sonya Hackney for failure to perform her duties in a satisfactory manner. 2017 Ky. App. Unpub. LEXIS 817, at *1. Hackney oversaw several employees, including one who Mountain CC fired for writing unauthorized prescriptions on a pre-signed blank pad. *Id.* at 2. Another employee raised this issue separately with Hackney and Mountain CC's executive director. The executive director confronted Hackney about why she had not contacted him regarding these events, including why there were pre-signed prescription forms. *Id.* at *2. Hackney "stated her belief others had already contacted him about [the fired employee], then restated what she had been told about the incident." *Id.* After Hackney's termination, she sued under a § 216B.165 theory. *Id.* at 4.

The Court of Appeals rejected Hackney's "attempt to fit into the mold required by KRS § 216B.165." *Id.* at 8. The Court based its ruling on the basis that "Hackney fail[ed] to offer any support for her position that this conversation constituted a protected activity." *Id.* at 9. The Court noted that her purported "report" came in the context of a conversation initiated by her employer. *Id.* However, the Court based its summary judgment ruling on the basis that Hackney simply could not support her position that she qualified under the statute. Contextually, it makes sense why this conversation would not fall under the statute's protection. Her executive director confronted Hackney directly about a breakdown in protocol leading to criminal activity that spoke to her own job performance. Hackney's response, in this context, does not naturally raise an issue about "quality of care of a patient, patient safety, or the health care facility's safety" protected by § 216B.165. The Court did not decide this case on the basis of who spoke first, they

8

decided this case on the basis that Hackney had no proof that she made a report that at all reached the provisions of the healthcare whistleblower statute.

Finally, the *Kercell* decision is easily distinguishable on the basis that the factual underpinning is significantly different from the case here. Norton Hospital fired Jill Kercell after her superiors became aware of the fact that she had a hidden camera in a clock on her desk to deter snooping. 2020 Ky. Cir. LEXIS 58, at *5–6. Kercell provided deposition testimony in response to a subpoena as a witness in a separate wrongful termination lawsuit involving patient safety concerns regarding the unsafe practices of an anesthesiologist. *Id.* at *1–2. In her own wrongful termination suit, she attempted to portray her subpoenaed deposition testimony as a "report" under § 216B.165. The Court held that "Ms. Kercell was not making an oral or written report of the problem to the health care facility; nor, was she making it to any appropriate private, public, state or federal agency. Thus, it does not appear that the affirmative evidence Ms. Kercell offers in this case establishes retaliation under KRS 216B.165." *Id.* at *24. Again, the Court did not decide this case on the basis that Kercell did not "initiate" the report. The Court decided the case on the basis that Kercell's activity—deposition testimony brought about only by subpoena—clearly did not constitute a report of patient safety concerns to *anyone*.

At this motion to dismiss stage, the Court finds the *MacGlashan* opinion instructive. Just as "there is no requirement in KRS § 216B.165(1) that an employee who reports an unsafe situation be the first or only employee to make the report," there is no language excising from the statute's protections an employee who makes a report in response to some external stimulus, such as a questionnaire. *See MacGlashan*, 84 F. Supp. 3d at 599. Defendants claim they "are not attempting to insert new terms or meaning into KRS 216B.165." [R. 6 at 6]. That, however, is precisely their aim. The rule proposed by Defendants is just that: a proposal. It is not found

9

anywhere in the statute, in the commentary, or in the caselaw interpreting the statute. None of the Defendants' cited authorities stand for their theory that such a restrictive rule exists, and the Court is unable to find a single case—reported or otherwise—supporting this position. Accordingly, "the Court will not insert a restrictive clause into the statute that does not exist." *MacGlashan*, 84 F. Supp. 3d at 600.

Construing the complaint in the light most favorable to Martin and accepting her well-pleaded allegations in the complaint as true, the Court is convinced that she has adequately plead a cause of action surviving a Rule 12(b)(6) motion to dismiss. Defendants' motion to dismiss Martin's first cause of action is denied.

**2**

Martin also brought a second cause of action for common law wrongful termination. Kentucky is an at-will employment state, meaning that an employer may discharge an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Weafer v. Heritage Installations I, LLC,* 709 S.W.3d 283, 284 (Ky. Ct. App. 2024) (citing *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)). Kentucky, however, recognizes a public policy exception to the at-will employment doctrine. *Id.* In a common law wrongful discharge case, a plaintiff must show first that "the discharge [was] contrary to a fundamental and well-defined public policy as evidenced by existing law" and second that the "policy [is] evidenced by a constitutional or statutory provision." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact. *Id.* Kentucky courts further require that "an employment-related nexus should exist within the public policy." *Id.* at 402. Accordingly, courts recognize two specific situations under the

public policy exception: "First, where the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment. Second, when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* Martin's second cause of action concerns the second situation.

"KRS 216B.010 states that one of the purposes of Chapter 216B is to 'improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth.'" *Foster*, 435 S.W.3d at 635. In passing Chapter 216B, the General Assembly found "that the licensure of health facilities and health services is a means to insure [sic] that the Citizens of this Commonwealth will have safe, adequate, and efficient medical care[.]" Ky. Rev. Stat. § 216B.010. Section 216B.165(3), in particular, evinces a policy of protecting healthcare employees from retaliation for "report[ing], disclos[ing], divulge[ing], or otherwise bring[ing] to the attention of the healthcare facility or service the circumstances or facts to form the basis of a report under subsection (1) or (2) of this section." *Id.* § 216B.165(3). These provisions demonstrate that if Defendants fired Martin in retaliation for her good-faith responses to the questionnaire reporting, disclosing, and divulging patient safety concerns, "it would violate the stated policy to ensure safe health-care facilities, thereby meeting the elements of common-law wrongful termination." *Foster*, 435 S.W.3d at 635.

Martin states in her complaint that Defendants fired her due to her truthful responses to the questionnaire involving patient safety concerns. [R. 1-1 at 7–8]. She further alludes to "a continuing and escalating pattern of disregard for patient safety, attempts to conceal violations, and retaliation against staff who fulfill their legal obligations to report patient safety concerns." [*Id.* at 8]. Construing the complaint in the light most favorable to Martin and accepting her well-

11

pleaded allegations in the complaint as true, Martin has sufficiently pled a cause of action under Kentucky's common-law wrongful termination. The Defendants' motion to dismiss Count 2 as it pertains to Plaintiff Martin is therefore denied.

**B**

In their Reply, Defendants argue that Martin's arguments "are better suited for discretionary review." [R. 6 at 15]. First, Defendants argue that "this question of Kentucky law should be certified to the Kentucky Supreme Court pursuant to Kentucky Rule of Civil Procedure 76.37." [*Id.*] The Defendants did not precisely define what the exact question of law is, but the Court infers that question to be whether Ky. Rev. Stat. § 216B.165 requires a plaintiff to initiate a qualifying "report" to fall under the anti-retaliation protections of subsection (3). [*Id.* at 7]. In the alternative, Defendants ask the Court to certify the question for immediate appeal under 28 U.S.C. § 1292(b). [*Id.*]

**1**

The Kentucky Supreme Court, by Order 2022-49, deleted CR 76.01–76.46 in its entirety. In its place, Kentucky Rule of Appellate Procedure 50 governs the certification of a question of law to the Kentucky Supreme Court. The Rule reads in relevant part:

> **(A) Power to Answer Federal Court or Sister State Highest Court**. If in any proceeding before any federal court or the highest appellate court of any other state or the District of Columbia, questions of law of this state may be determinative of the cause then pending before that originating court, and it appears to that court or a party that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state, a request that the Kentucky Supreme Court certify the law may be made by the originating court.
>
> **(B) Procedure for Request**. Certification of the law may be requested by any of the courts referred to in paragraph (A) of this rule either upon the requesting court's own motion or upon motion to the requesting court by any party to the cause before it. Other than

>   the Commonwealth of Kentucky, as set forth in paragraph (J) below, no party may directly request certification from the Kentucky Supreme Court.

Ky. R. App. P. 50. Whether to certify a question of law to a state's highest court is within a federal court's sound discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Certifying a question of law is appropriate when "the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). But a federal court "generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). A federal court "may decline certification even if the Kentucky Supreme Court has not addressed the exact question at issue, so long as Kentucky law provides well-established principles to govern the outcome of the case." *Smith v. Joy Techs., Inc.*, 828 F.3d 391, 397 (6th Cir. 2016).

For many of the reasons articulated in Part II(A)(1) of this Memorandum Opinion, the Court does not believe that this question is appropriate for certification. A federal district court sitting in diversity applies state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). It follows then that federal district courts regularly apply state law without resorting to the certification of state law questions in every diversity suit. Here, a reasonably clear and principled course exists, which is to deny Defendants' request to insert a restrictive clause into § 216B.165 that does not exist. *MacGlashan*, 84 F. Supp. 3d at 600. While Defendants may present a unique theory interpreting § 216B.165, their proposed reading of a law that has been in effect since 1998 does not constitute a "new" or "unsettled" state law question. For these reasons, the Court denies

13

Defendants' request to certify this question to the Kentucky Supreme Court under Ky. R. App. P. 50.

2

Defendants, in the alternative, also ask the Court to "certify the question for immediate appeal under 28 U.S.C. § 1292(b)." [R. 6 at 15]. 28 U.S.C. § 1292(b) permits a party to request the appeal of a non-final order. The decision of whether to certify an interlocutory appeal is within the sound discretion of the district court. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). The court may certify an interlocutory appeal if three criteria are satisfied: (1) the order involves a controlling question of law, (2) there is substantial ground for a difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Swint*, 514 U.S. at 47. "Substantial grounds for a difference of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *W. Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn. 2000) (citation modified). An interlocutory appeal materially advances the litigation when it "save[s] judicial resources and litigant expense." *Id.* at 1026. Interlocutory appeals are generally disfavored and reserved for "exceptional circumstances." *Sinclair v. Schriber*, 834 F.2d 103, 105 (6th Cir. 1987). The party seeking a §1292 appeal must show that exceptional circumstances exist warranting the interlocutory appeal. *Alexander v. Provident Life & Acc. Ins. Co.*, 663 F. Supp 2d 627, 639 (E.D. Tenn. 2009).

The Defendants' request for an interlocutory appeal takes up a single sentence offering no justification as to why such an appeal is necessary. [R. 6 at 15]. Even so, Defendants could not satisfy that such a request meets the requirements of § 1292 to begin with. Whether Martin

14

made a report under Kentucky's healthcare whistleblower statute is a controlling question of law relevant to this Order denying Plaintiff's motion to dismiss. But Defendants have not convinced the Court that the matter is one that is "difficult and of first impression." This is the same question that the Court already addressed in deciding whether to certify Defendants' proposed rule to the Kentucky Supreme Court. There is also no sense that an interlocutory appeal would "save judicial resources and litigant expense." At this motion to dismiss stage, it would strain the litigants who would expend time and resources asking the Sixth Circuit to review this Court's order denying a *partial* motion to dismiss. Accordingly, the Court exercises its sound discretion in denying the defendants' request to certify an interlocutory appeal on this question.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Partial Motion to Dismiss **[R. 4]** is **DENIED**.

2. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendants **SHALL** file their responsive pleadings within **fourteen (14)** days of the entry of this Order.

This 2d day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge